**Mary MOODY et vir., Appellants,**

v.

**The CITY OF GALVESTON, Appellee.**

**No. 16429.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 22, 1975.

Rehearing Denied July 10, 1975.

Thomas M. Harlan, Alvin, for appellants.

Mills, Shirley, McMicken & Eckel, John S. McEldowney; Alton C. Todd, Galveston, for appellee.

COLEMAN, Chief Justice.

This is a suit for personal injuries resulting from a fire caused by the ignition of a flammable gas introduced into the plaintiffs' water line with the water sold to the plaintiffs by the defendant. A judgment for the defendant was entered on a jury verdict. The principal issue on appeal is the applicability of strict liability to a city operating a water supply system. Necessary to the decision of this question is the question of whether water which is infiltrated with a flammable gas is a defective product.

On June 3, 1973 part of the water supply of the City of Galveston was obtained from fourteen water wells located near the town of Alta Loma, Galveston County, Texas. The water was pumped through two water mains to a treatment plant in the City of Galveston, Texas. These lines are referred to as the Old Main and the New Main in the testimony. Mr. and Mrs. Moody were residents of Alta Loma, but were supplied untreated water by the City of Galveston. Originally they were supplied water through a line which ran into the Old Main from the top through a "breather". This line was owned by the City and ran to a water meter, which measured the water supplied to the Moodys. A line owned by the Moodys then transported the water to a small tank which was equipped with a water pump designed to boost the pressure to an amount sufficient to allow convenient operation of washing machines and other appliances. It is undisputed that two of the water wells produced a significant amount of a flammable gas which was transported along with the water into the homes of those persons being supplied from the Old Main at points between the water wells and the treatment plant. It is undisputed that the gas passing through the water meter caused it to gauge the use of water improperly, for which reason the City gave certain of its customers, including the plaintiffs, rebates on their water bills.

When the gas accumulated in sufficient quantities, it would interfere with the flow of water. When a faucet was turned on in the house on these occasions there would be a sputtering action and at times no water would flow. There is testimony that the same action would occur from time to time because of air in the lines.

Some time before the accident made the basis of this suit the plaintiffs' water line was connected to the New Main. There is testimony that the New Main was a 39-inch line and that it was tapped near the center of the pipe rather than from the top. The plaintiffs testified that they were told that this would take care of their problem with gas. On the day in question Mrs. Moody was cleaning corn at her kitchen sink when the water stopped coming out of the faucet. Mrs. Moody testified that she thought there was air in the line and that she walked over to the table and lit a cigarette while she was waiting for the air to clear out of the line. She picked up an ashtray and walked back to the kitchen sink with the lighted cigarette in an ashtray and placed it near the sink. The gas being emitted from the water faucet caught fire. Mrs. Moody was burned when she turned off the faucet in order to shut off the flow of gas.

By its answers to the special issues submitted the jury found that the City of Galveston was transmitting a flammable substance through its water system to the home of Mr. and Mrs. E. O. Moody, but that such action was not negligence; that the failure of E. O. Moody to bleed the tank on the morning of June 3rd was negligence and a proximate cause of the occurrence in question, but not the sole proximate cause; that the action of Mary Moody in placing a lighted cigarette in close proximity to the faucet immediately prior to the incident in question was negligence and a proximate cause of the occurrence in question. The jury refused to find that the plaintiff voluntarily assumed the risk of a flammable substance being transmitted through the water line. It found $300.00 damage for loss of earnings in the past; $175.00 for medical expenses incurred; and $800.00 for physical pain and mental anguish which she has suffered in the past.

By Points 1 and 2 the plaintiffs complain of the action of the trial court in refusing to submit requested issues on implied warranty of merchantability and an implied warranty of fitness for a particular purpose. The first requested special issue reads: "Do you find from a preponderance of the evidence, if any, that the Defendant, The City of Galveston, its agents or employees, violated an implied warranty of merchantability?"

"You are instructed that

(a) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

(b) Goods to be merchantable must be at least such as

(1) pass without objection in the trade under the contract description; and

(2) in the case of fungible goods, are of fair average quality within the description; and

(3) are fit for the ordinary purposes for which such goods are used;"

■ This special issue and the instruction accompanying it is not in substantially correct form. It does not confine the jury to the facts of the particular sale which resulted in the injury of which complaint is made. The issue is unnecessarily confusing. As we view the evidence there was no specific contract either written or oral; there was a continuing offer to sell water, which offer was accepted by the act of drawing water through the water meter. The term "merchant" is defined in Sec. 2.104 of the Uniform Commercial Code, V.T.C.A., as being a "person who deals in goods of the kind . . ." The term "goods" is defined in Sec. 2.105 of the Code. In essence the definition is that goods means all things which are movable at the time of identification to the contract for sale. As we view the evidence it is undisputed that the City of Galveston was selling water. It is a question of law as to whether such water constitutes "goods". Instead of the language of Subparagraph (a), under the facts of this case, and assuming that the Uniform Commercial Code applies to this transaction, the instruction should have been to the effect that in making a sale of water the City of Galveston impliedly warrants that the water is merchantable. Paragraph (b) would have been confusing to the jury. There was no testimony as to whether the water would or would not pass without objection in the trade or whether the water was or was not of fair average quality. The real issue was whether or not the water was suitable for ordinary household use. It is unlikely that the jury would have known the meaning of "fungible goods". The court did not err in refusing to submit the requested special issue. Rule 279, Texas Rules of Civil Procedure.

Section 2.315, Vernon's Texas Codes Annotated, Business and Commerce, provides:

"Where the seller at the time of contracting has reason to know any particu-

lar purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."

The plaintiffs requested the court to submit to the jury the following issue:

"Do you find from a preponderance of the evidence, if any, that the Defendant, The City of Galveston, its agents or employees, violated an implied warranty of fitness for a particular purpose, in its delivery of water to the home of Mr. and Mrs. Moody?

"You are instructed that where the seller at the time of contracting has reason to know of any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose."

■ Under the facts of this case there can be no question but that agents of the City knew that the water was to be furnished for ordinary household use and that the plaintiffs necessarily relied on the City to furnish suitable water for household use. The question was whether or not the water was suitable for that purpose. As requested the issue and its accompanying instruction would tend to confuse the jury and submitted issues of law as well as of fact. The trial court did not err in refusing the issue. Rule 279, T.R.C.P.

Since we have determined that the issues were not in proper form, it is unnecessary to determine whether or not the provisions of the Business and Commerce Code referred to herein apply to a municipality engaged in furnishing water for compensation to its inhabitants and others. Appellants' Points 1 and 2 do not present error.

At the conclusion of all the evidence at this trial, and before the case was submitted to the jury, the plaintiffs presented to the court a motion for instructed verdict on the liability issues, and that as to the liability issues the case be withdrawn from the jury. The plaintiffs contended that the evidence established as a matter of law the liability of the City as the seller of the defective product under the doctrine of Sec. 402a of the Restatement of Torts. The motion was denied. The plaintiffs did not file a motion for judgment notwithstanding the verdict, but they complained in their motion for new trial of the court's failure to instruct the jury on the issues of liability.

The evidence establishes that the City was engaged in the business of selling water; that it delivered water to the plaintiffs through a pipeline system; that in producing water from certain of its water wells the City also produced a quantity of flammable gas; that this gas in conjunction with the water was introduced into the pipeline system; and that the gas was commingled with the water at the time it was sold to plaintiffs. The presence of flammable gas in the plaintiffs' water lines created an unreasonable risk of harm to the plaintiffs and was a producing cause of the injuries suffered by Mrs. Moody. The jury failed to find that the plaintiff voluntarily assumed the risk of a flammable substance being transmitted through her water lines.

■ The liability of a seller of a defective product to the consumer is determined by the rule set out in Section 402a of the Restatement of the Law of Torts in the State of Texas. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967). We have found no Texas cases which clearly hold that a municipality engaged in selling water is subject to the doctrine of strict liability. There are cases holding that the furnishing of a water supply by a municipal corporation constitutes a sale of goods. Canavan v. City of Mechanicville, 229 N.Y. 473, 128 N.E. 882 (1920); Mayor, etc. of Jersey City v. Town of Harrison, 71 N.J.L. 69, 58 A. 100, affirmed 72 N.J.L. 185, 62 A. 765 (1904); Coast Laundry, Inc. v. Lincoln

City, 9 Or.App. 521, 497 P.2d 1224 (1972); Helvey v. Wabash County Remc, 151 Ind. App. 176, 278 N.E.2d 608 (1972). In City of Denton v. Gray, 501 S.W.2d 151 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n. r. e.), the court stated:

"A city that owns and operates a waterworks system for profit is required by law to exercise ordinary care in the operation of its system. It is subject to the same standard of care as is any other person. It is not an insurer and is not liable for damages resulting from the operation of its system, unless such damages are proximately caused by its negligence. City of Bryan v. Jenkins, 247 S.W.2d 925 (Waco Tex.Civ.App., 1952, ref., n. r. e.)."

In the above cited case a homeowner brought an action against the city for damage from flooding allegedly caused by the negligence of the city employees. There was no question of a defective product or strict liability involved.

■ When furnishing water to its inhabitants, or to those who do not reside within the city, as in this case, the city was acting in a proprietary capacity and is not immune to liability in tort. Hodge v. Lower Colorado River Authority, 163 S.W.2d 855 (Tex. Civ.App.—Austin 1942, writ dism'd by agreement); City of Wichita Falls v. Lipscomb, 50 S.W.2d 867 (Tex.Civ.App.—Fort Worth 1932, writ ref'd); City of Waco v. Busby, 396 S.W.2d 469 (Tex.Civ.App.— Waco 1965, writ ref'd n. r. e.).

■ Since it is clear that a city when engaged in a proprietary activity is subject to the same rules or tort liability as private persons, we conclude that the doctrine of strict liability as set out in Sec. 402a of the Restatement of Torts is applicable to the City when engaged in the sale of water through a municipal waterworks system.

The crucial question is whether or not the water was defective at the time it passed through the plaintiffs' water meter. There

is no evidence of any possibility that a flammable gas could have been introduced into the plaintiffs' household piping system from any source other than the City's water mains. There is no evidence that plaintiff had suffered any ill effects from drinking the water or washing with the water or from using the water in the preparation of food.

The defendant contends that the evidence does not show a defective product. The City relies on Anderson v. Associated Grocers, Inc., 11 Wash.App. 774, 525 P.2d 284 (1974), where the plaintiff's decedent was bitten by a spider on a piece of wet burlap on top of a box of radishes which had been under bananas in a banana box. In this case the court said that there was no showing that the bananas were in any way defective or unfit for the purpose intended. The spider was not in the bananas and they were edible and saleable.

Erwin v. Guadalupe Valley Electric Co-op, 505 S.W.2d 353 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.), was a suit for wrongful death of a football coach who was electrocuted when a goal post he and others were constructing came into contact with a high voltage transmission line. It was alleged that the electric product was defective in that the wires were too low. Special exceptions were sustained to the portion of plaintiffs' pleadings in which they sought to recover under the theory of strict liability, or products liability. This action of the trial court was affirmed. The opinion states:

". . . plaintiffs alleged no defects in the manufacture of the electricity. Even if it be assumed that the doctrine of products liability extends to the sale of electricity, it was incumbent on plaintiffs, if they seek the protection of the doctrine embodied in Section 402A of the Restatement, and approved by the Supreme Court of Texas in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (1967), to show a defect in the *electricity*. Buckeye

Union Fire Ins. Co. v. Detroit Edison Co., 38 Mich.App. 325, 196 N.W.2d 316, 318 (Ct.App.1972)."

In Barbee v. Rogers, 425 S.W.2d 342 (Tex. 1968), the court held that the doctrine of strict liability would not be extended to the prescription, fitting and sale of contact lenses where there was no claim that the lenses were defective in themselves and the lenses were not a finished product offered to the general public in the regular channels of trade. The court stated:

". . . The failure here is not attributable to the product itself, i. e., the contact lenses, but to the professional and statutorily authorized act of 'measuring the powers of vision' of Petitioner's eyes and 'fitting lenses * * * to correct or remedy * * * [his] defect or abnormal condition of vision.' This is not the act of one selling a 'product in a defective condition unreasonably dangerous to the user' in the terms of the Torts Restatement. . . . , the fact remains that the contact lenses sold to Petitioner were designed in the light of his particular physical requirements and to meet his particular needs . . . They were not a finished product offered to the general public in regular channels of trade . . . , nor was it contemplated that Petitioner would use them without changes or adjustments to fit his needs . . . ."

These cases point up the necessity of showing that the product must be defective as marketed. See also Gravis v. Parke-Davis & Co., 502 S.W.2d 863 (Tex.Civ.App.— Corpus Christi 1973, ref'd n. r. e.). These cases, however, do not resolve the question presented in this case. The product, water, as delivered, was intermingled with a flammable gas. The presence of this gas in the plaintiffs' water lines created an unreasonable risk of injury to the plaintiffs. We consider the case more analogous to those cases in which liability was upheld where a foreign substance, such as glass, rocks, or pieces of metal, are packaged with food products. In Gladiola Biscuit Co. v. Southern Ice Co., 267 F.2d 138 (5th Cir. 1959), a biscuit manufacturer recovered from an ice manufacturer the costs incurred in destroying biscuits and biscuit dough because of glass in ice purchased from the distributor. The court held that ice, if not a food in the sense of a nutritive item, must be regarded as a commodity for human consumption within the rule imposing liability without fault on manufacturer of foodstuff for injuries sustained by one who consumes product containing deleterious substances. In Campbell Soup Co., Inc. v. Ryan, 328 S.W.2d 821 (Tex.Civ.App.—Waco 1959, no writ hist.), the court sustained a judgment against the manufacturer of a "T-V Chicken Dinner", which contained a metal washer. For a comprehensive correlation of the authorities see Annotation: Products Liability-Beverages, 77 A.L.R.2d 215.

The fact that the injury occurred not as a result of drinking or washing with the water but from an ignition of the gas which had accumulated in plaintiffs' water lines and storage tank when she was attempting to use water in the preparation of food for cooking, should not insulate the City from liability. Plaintiffs purchased water. They received water and a flammable gas. We consider that the product was defective. The trial court erred in refusing to withdraw from the jury the issues on liability. Since the plaintiffs failed to present a motion for judgment notwithstanding the verdict, judgment cannot be rendered by this court in her favor. The error caused the rendition of an improper judgment, and the cause must be reversed and remanded to the trial court.

The plaintiffs complain that the trial court erred in refusing to submit certain requested issues embodying the doctrine of res ipsa loquitur. The trial court submitted issues inquiring whether or not the City of Galveston was transmitting a flammable substance through its water system to the

home of Mr. and Mrs. E. O. Moody, and predicated on this issue a further issue was submitted inquiring whether such action by the City of Galveston was negligent and a proximate cause of the occurrence in question.

 Since the court submitted this broad general issue on the question of negligence, the plaintiffs could not have been injured by the refusal of the court to submit the issues requested. In Mobil Chemical Co. v. Bell, 517 S.W.2d 245 (Tex.1975), the Supreme Court of Texas pointed out that the effect of successfully invoking the res ipsa doctrine was that the plaintiff can survive no evidence procedural challenges— he has produced some evidence of the defendant's negligence. He is in the same position as any other plaintiff who has made out a case for the jury. No presumption of the defendant's negligence arises; the jury is merely free to infer negligence. It is our view that the instrumentality causing the damage was the presence of flammable gas in the water lines of the plaintiffs' house. We are further of the view that the accident was of such a character under the record in this case that it would ordinarily not happen in the absence of negligence. On a retrial of this case, if proper request is made, the trial court doubtless will consider the issues and instructions suggested by the Supreme Court of Texas in the Mobil Chemical Company case. The point does not present reversible error. Rule 434, Texas Rules of Civil Procedure.

 Plaintiffs requested certain special issues seeking to establish a basis for the recovery of exemplary damages. It is a rule of general application that exemplary damages cannot be recovered against a municipal corporation. Cole v. City of Houston, 442 S.W.2d 445 (Tex.Civ.App.—Houston [14th], 1969, no writ hist.); Annotation, 19 A.L.R.2d 903 (1951). In addition, after viewing the evidence most favorably to the plaintiffs, any negligence shown to have been committed by the managerial or supervisory employees of the City appears to be passive or negative rather than positive or affirmative. The evidence fails to meet the requirement that there be an entire want of care so as to raise the belief that the acts complained of were the result of a conscious indifference to the rights or welfare of others. There does not appear to be any indication of wilfulness, wantonness or malice. The issues on gross negligence are not raised by the evidence. Sheffield Division Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.1964).

 Appellants contend that the trial court erred in submitting Special Issue No. 9 inquiring as to the negligence of Mary Moody, contending that there was no duty on the part of Mary Moody to not smoke at her kitchen sink. The point cannot be sustained. The plaintiff was under a duty to exercise that degree of care for her own safety as a reasonably prudent person would or should have exercised under the same or similar circumstances. Walgreen Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625 (1941). Defendant's answer generally alleged contributory negligence and the issue submitted was raised by the evidence.

Reversed and remanded.