2002 SD 3

**DAKOTA PORK INDUSTRIES,**
Plaintiff and Appellant,

v.

**The CITY OF HURON, South Dakota,
A Municipal Corporation, Defendant
and Appellee.**

**No. 21990.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 13, 2001.

Decided Jan. 2, 2002.

Rodney Freeman, Jr., Jeff Burns of Churchill, Manolis, Freeman, Kludt, Shelton & Burns Huron, South Dakota, Attorneys for plaintiff and appellant.

Neil Fulton, Robert B. Anderson of May, Adam, Gerdes and Thompson Pierre, South Dakota, Attorneys for defendant and appellee.

GORS, Acting Justice.

[¶ 1.]  Dakota Pork Industries (Dakota Pork) appeals the trial court's grant of summary judgment to the City of Huron (City) on breach of express warranty and breach of implied warranty of fitness for a particular purpose.  We affirm.

**FACTS AND PROCEDURE**

[¶ 2.]  Dakota Pork operated a pork processing plant in Huron, South Dakota, from 1987 until it ceased operations in July of 1997.  In 1991, Dakota Pork entered into an agreement with the City whereby City would provide for Dakota Pork's water needs in exchange for Dakota Pork's water rights in the James River.  Negotiations regarding this agreement took place over the course of a year.  No special conditions or uses for water were expressed in the written contract.

[¶ 3.]  Prior to May 24, 1994, a foreign substance, later determined to be calcium carbonate, appeared on the meat at Dako-

ta Pork. On May 29, 1998, Dakota Pork filed a complaint against City for negligence, breach of express warranty, and breach of implied warranty of fitness for a particular purpose. City moved for summary judgment and a hearing was held February 26, 2001. The trial court granted City's motion on all counts.

[¶ 4.] Dakota Pork appeals the issues of breach of express warranty and breach of implied warranty of fitness for a particular purpose.

## STANDARD OF REVIEW

[¶ 5.] The standard of review for this Court in reviewing a trial court's summary judgment is well settled:

> Summary judgement is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. Cases involving the interpretation of written documents are particularly appropriate for disposition by summary judgment, such interpretation being a legal issue rather than a factual one.

*Kimball Inv. Land, Ltd. v. Chmela,* 2000 SD 6, ¶ 7, 604 N.W.2d 289, 292 (internal citations omitted).

## ANALYSIS AND DECISION

[¶ 6.] The primary inquiry is whether City's furnishing of water to Dakota Pork constitutes a sale of goods under Article 2 of the Uniform Commercial Code (UCC). Courts have adopted two conflicting viewpoints.

[¶ 7.] One viewpoint is expressed in the pre-UCC case of *Canavan v. City of Mechanicville,* 229 N.Y. 473, 128 N.E. 882 (1920). In *Canavan* the New York Court of Appeals examined the sale of water under the Uniform Sales Act. Under that Act, goods were defined in part as "all chattels personal other than things in action or money." The court held that "[t]he furnishing of water, through a system of waterworks, by a water corporation, either private or municipal, to private consumers, at a fixed compensation, is a sale of goods within the meaning of the statute. . . . It is a sale of goods as if the water were collected and delivered in bottles for a price." *Id.* at 883. *See also Gall by Gall v. Allegheny County Health Dep't,* 521 Pa. 68, 555 A.2d 786, 789 (1989) (stating "[a]ll who have paid bills for water can attest to its movability"); *Zepp v. Mayor & Council of Athens,* 180 Ga.App. 72, 348 S.E.2d 673, 677 (1986) (stating that it does not find *Coast Laundry v. Lincoln City,* 9 Or.App. 521, 497 P.2d 1224 (1972) compelling, and that "[w]ater, like electricity is a thing; it exists; it is 'fairly identifiable' as a movable at the time of identification to the contract for sale").

[¶ 8.] The other viewpoint is expressed in *Coast Laundry v. Lincoln City,* 9 Or. App. 521, 497 P.2d 1224 (1972). In *Coast Laundry* an Oregon court held that the sale of water by a municipality is not governed by the UCC. *Id.* at 1228. The court analyzed *Canavan, supra,* in light of the UCC. The court stated, "[t]he definition of goods is based on the concept of movability and the term 'chattels personal' is not used. It is not intended to deal with things which are not fairly identifiable as movable before the contract is performed."

*Id.* (*citing* Official Comment, 1 Uniform Laws Ann. 79, 89 § 2–105 (1968)). The *Coast Laundry* court determined that water is not "fairly identifiable as movable before the contract is performed" and concluded that the sale of water does not constitute the sale of goods. *Coast Laundry,* 497 P.2d at 1228.

■ [¶ 9.] The UCC defines "goods" as all things "which are movable at the time of identification to the contract for sale[.]" SDCL 57A–2–105(1). Goods "must be both existing and identified before any interest in them can pass." SDCL 57A–2–105(2). "Whatever can be measured by a flow meter has 'movability' as that term is used in connection with the definition of goods." 1 R. Anderson, *Uniform Commercial Code,* § 2–105:19, at 560 (3rd ed 1981).

[¶ 10.] We agree with the conclusion reached in *Canavan* and find that the sale of water by a municipality is the sale of goods and a transaction which is governed by the UCC. Therefore, we next address the issues of breach of express warranty and breach of implied warranty of fitness for a particular purpose.

[¶ 11.] **1. Breach of express warranty.**

■ [¶ 12.] Dakota Pork argues that City breached an express warranty in its contract. An express warranty is an affirmation of fact or promise that becomes the basis of the bargain between a buyer and seller. SDCL 57A–2–313. Dakota Pork admits that the contract did not contain an express warranty regarding water quality standards. Dakota Pork contends that, while it was not discussed in the contract, water quality was discussed in the negotiations and City was aware of the water needs and purposes. Dakota Pork relies on SDCL 57A–2–202 which provides:

Terms ... which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence ... of a contemporaneous oral agreement *but may be explained or supplemented*

(a) By course of dealing or usage of trade (§ 57A–1–205) or by course of performance (§ 57A–2–208); and

(b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

(emphasis added).

[¶ 13.] The CEO of Dakota Pork, Carl Kuehn, stated in his deposition that negotiations with City were extensive and addressed issues of quality, quantity, time and price. Kuehn also testified that Dakota Pork's requirement for water was "potable or drinkable water that fell within the guidelines [which] the Environmental Protection Agency had established for potable water."

[¶ 14.] City denies making any oral guarantees or express warranties regarding the water quality. City argues that because the contract is a complete and exclusive statement of the agreement between Dakota Pork and City, SDCL 57A–2–202(b) precludes the supplementation of terms to the contract. We agree. Supplemental terms cannot be introduced through contemporaneous statements because, in this case, the written contract was a complete and exclusive statement of terms. Furthermore, when asked to identify any express warranties relating to water quality, Dakota Pork simply referred to the contract, which was silent. Dakota Pork produced no evidence that City made or breached an express warranty. Dakota Pork's alleged oral understanding with

City is not consistent with the written contract. The express terms of the contract control in the face of inconsistency. SDCL 57A–1–205(4).

[¶ 15.] The trial court concluded that Dakota Pork failed to show a genuine issue of material fact regarding what water standards were required under the contract, or that the City furnished something less than potable or drinkable water under the EPA guidelines. We agree that the trial court properly granted summary judgment on this issue.

[¶ 16.]  **2.  Breach of implied warranty of fitness for a particular purpose.**

 [¶ 17.] The next issue is whether an implied warranty of fitness for a particular purpose applies. In *Canavan*, the court held that although the furnishing of water constitutes the sale of goods, there are no implied warranties of merchantability and fitness for a particular purpose. *Canavan*, 128 N.E. at 883. *See also Sternberg v. New York Water Service Corp.*, 155 A.D.2d 658, 659, 548 N.Y.S.2d 247 (N.Y.A.D.1989) (adopting the holding in *Canavan* that no implied warranties attach). Likewise, the court in *Coast Laundry* held that because the sale of water was not the sale of goods, it carried no implied warranties of merchantability or fitness for a particular purpose. 497 P.2d at 1227–28. The court stated

> While we have found decisions holding that suppliers of electric power, natural gas and bottled fuel gas may be held liable to their customers on the theory of . . . breach of implied warranty, we have been cited to no authority nor have we found any holding there is an express or implied warranty of merchantability or fitness for a particular purpose in connection with the sale and supply of water.

*Id.* We agree and hold that the furnishing of water by a municipality through its water works system does not carry an implied warranty of fitness for a particular purpose.

[¶ 18.] We therefore affirm the trial court's granting of summary judgment on both counts.

[¶ 19.]  GILBERTSON, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.