2004 SD 48

**Rebecca Jean KUEHL, Plaintiff and Appellant,**

v.

**HORNER (J.W.) LUMBER COMPANY, A South Dakota Corporation, Defendant, Third Party Plaintiff and Appellee,**

**Lance Adam Warne and Kevin Schoenfelder, Third Party Defendants.**

**No. 22777.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided April 7, 2004.

Dennis C. McFarland, Sioux Falls, South Dakota, Attorney for plaintiff and appellant.

Michael L. Luce and Melissa C. Hinton of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendant, third party plaintiff and appellee.

BASTIAN, Circuit Judge.

[¶ 1.] Rebecca Jean Kuehl (Kuehl) sued Horner Lumber Company, Inc., (Horner) claiming Horner employees negligently loaded or assisted the loading of a trailer with lumber thereby creating an overloaded condition that caused an accident that injured her. The trial court granted

summary judgment in favor of Horner and entered a final judgment on the merits. Kuehl appeals. We reverse and remand.

## FACTS [1]

[¶ 2.] On January 17, 1998, Lance Warne (Warne) assisted his father-in-law, Kevin Schoenfelder (Schoenfelder) in hauling some scrap lumber that Schoenfelder had purchased from Horner. The sale was arranged by Schoenfelder's father-in-law, Merle Haensel (Haensel). The lumber consisted of odds and ends that appeared to be left over or pulled out from loads because they were crooked, warped or weathered. Schoenfelder purchased trusses, shingles and boards of all dimensions.

[¶ 3.] Schoenfelder made arrangements for one trailer and two hayracks to be used to haul the lumber. Schoenfelder owned the trailer and brought it to Horner from his home in Renner. The trailer was approximately seventeen feet from the tongue to the end and seven feet wide.

[¶ 4.] Schoenfelder determined how the hayracks and the trailer would be loaded. The two hayracks were loaded first. Haensel provided instruction to the Horner Lumber employee who used the forklift to load trusses onto one or both of the hay racks. The trailer was then hooked to Warne's pickup and loaded with the remaining lumber. Some but not all of the lumber had previously been banded by Horner with metal bands. Some of the bands had been broken and many of the bands were not tight. Schoenfelder did not rely on the metal bands to hold the load together. It is disputed whether Warne and Schoenfelder loaded the lumber on the trailer by hand without assistance or whether they were assisted by

Horner employees with or without the forklift.

[¶ 5.] After the trailer was loaded Warne and Schoenfelder secured the load with chains and nylon straps. The three vehicles left Horner at the same time. Warne was driving his pickup and pulling the loaded trailer. They all proceeded north toward Schoenfelder's home in Renner. Warne stopped to put air in the trailer tires allowing the others to proceed ahead.

[¶ 6.] The accident happened around 10:45 a.m. in rural Minnehaha County north of Sioux Falls. Kuehl was southbound on Highway 115 and Warne was northbound. Warne's pickup and trailer began to fishtail after he hit a small bump. As he was fishtailing Warne saw Kuehl's vehicle approaching just before the trailer struck her vehicle. After the impact Warne's pickup and the trailer jackknifed and slid down into the ditch. The load remained intact on the trailer although some of the lumber had broken during the accident.

[¶ 7.] Kuehl suffered severe injuries as a result of the accident. Her claims against Warne and Schoenfelder were settled before this case commenced. They were named as third party defendants in this action for purposes of contribution and the claim was dismissed in the final judgment.

## DECISION

[¶ 8.] This Court's standard of review regarding a trial court's grant or denial of summary judgment is well established:

> Summary judgment is authorized 'if the pleadings, depositions, answers to inter-

---

1. Except where noted, these facts represent the facts that were agreed upon by the parties. They are derived from Horner's statement of undisputed material facts and Kuehl's statement of genuine issues of material fact remaining for trial that were presented to the trial court.

rogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

Dakota Pork Industries v. Huron, 2002 SD 3, ¶ 5, 638 N.W.2d 884, 885 (internal citations omitted). Kuehl argues that material issues of fact defeat Horner's motion for summary judgment. The factual issues are discussed below.

## ISSUE

[¶ 9.] **Did Horner owe a duty to Kuehl?**

[¶ 10.] "The three necessary elements of actionable negligence are: (1) a duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D.1988). Before liability may be imposed on the theory of negligence there must be a duty on the part of the defendant to protect a plaintiff from injury. *Clausen v. Aberdeen Grain Inspection*, 1999 SD 66, 594 N.W.2d 718. While negligence actions are generally not suited for summary judgment, such a result is proper when the duty question is resolved in the defendant's favor. *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D.1993). The existence of such a duty

is a question of law subject to de novo review. *Id.* The concept of duty was recently discussed in *Braun v. New Hope Tp.*, 2002 SD 67, ¶ 9, 646 N.W.2d 737, 740:

For the law to impose a duty, a sufficient relationship must exist between the parties. Foreseeability may also create a duty. Although foreseeability is a question of fact in some contexts, foreseeability in defining the boundaries of a duty is always a question of law. Foreseeability in the 'duty' sense is different from foreseeability in fact issues bearing on negligence (breach of duty) and causation. (internal quotations and citations omitted).

[¶ 11.] A duty can be created by statute or common law. *Poelstra v. Basin Elec. Power Co-op.*, 1996 SD 36, ¶ 11, 545 N.W.2d 823, 826. Although Kuehl alleges several violations of state law, the violations do not create a duty on the part of Horner.[2]

[¶ 12.] To determine whether a common law duty has been created it is necessary to consider Restatement (Second) of Torts 324A (1965):

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

a) his failure to exercise reasonable care increases the risk of such harm, or

b) he has undertaken to perform a duty owed by the other to the third person, or

---

2. Kuehl argues that violations of SDCL 32–15–27, 32–18–3 and 32–22–8.1 have created a statutory duty. All of these statutes pertain to the operator of a vehicle that is towing a trailer or to the owner of a trailer. None of these statutes pertain to Horner.

c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[¶ 13.] Some of Kuehl's evidence that was presented in opposition to Horner's motion for summary judgment must be rejected. Kuehl submitted the affidavit of a private investigator who had no first-hand knowledge of the accident or the preceding events. Kuehl relies on the reports of six interviews conducted by the investigator and attached to his affidavit. Evidence submitted in affidavits as part of a summary judgment proceeding must be made on personal knowledge and be legally admissible. SDCL 15-6-56(e). Parties cannot rely on recitations of hearsay in affidavit form without also laying a foundation for an exception to the hearsay rule. *Chem–Age Industries, Inc., v. Glover,* 2002 SD 122, 652 N.W.2d 756. The interview reports attached to the investigator's affidavit are hearsay and cannot be considered.

[¶ 14.] Kuehl also submitted the affidavit of Lewis Dirks, a qualified accident reconstructionist. Dirks' affidavit complies with SDCL 15-6-56(e). Dirks had been hired by an insurance company to investigate the accident and report his findings. He reviewed photographs of the accident scene and observed that the trailer was carrying lumber that had been banded with metal bands. He concluded that because the lumber was banded, it was not stacked to the front of the trailer but loaded further to the rear.

[¶ 15.] Dirks also concluded that the banded bundles of lumber were of sufficient weight that two men could not lift them and place them onto the trailer. This conclusion is supported by a cursory view of the photographs in the record. Dirks found that there were at least two banded bundles of lumber on the trailer. He estimated that each weighed between four hundred to six hundred pounds. He further concluded that these bundles were "too large, heavy and awkward" to load without the assistance of a forklift or a loader and that the design of the trailer would not prevent a forklift from being used. He determined that the accident was caused by the excessive weight and improper placement of the load on the trailer.

[¶ 16.] For summary judgment purposes we must view the facts in a light favorable to Kuehl and give her the benefit of all reasonable inferences. *Dakota Pork Indus., supra.* Dirks' affidavit creates material issues of fact as to Horner's assistance in loading the trailer for travel on a public highway and Horner's failure to use reasonable care thereby increasing a foreseeable risk of harm to the public. Restatement (Second) of Torts 324A(a) (1965). Thus, we hold that the existence of genuine issues of material fact preclude summary judgment in this case.

[¶ 17.] We have considered Kuehl's other assignments of error and find them to be without merit.

[¶ 18.] Reversed and remanded.

[¶ 19.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 20.] MEIERHENRY, Justice, dissents.

[¶ 21.] BASTIAN, Circuit Judge, for SABERS, Justice, disqualified.

MEIERHENRY, Justice (dissenting).

[¶ 22.] I respectfully dissent.

[¶ 23.] Kuehl filed suit against Horner for allowing Warne to leave the lumber yard with the dangerous load and for negligently loading the trailer and banding the lumber. It should be noted that the trial

court granted summary judgment based upon Cuppy v. Bunch, 88 S.D. 22, 214 N.W.2d 786 (1974) and Restatement (Second) of Torts §§ 314–320. The trial court determined that a party owes no duty to a third party absent a special relationship such as parent-child, master-servant, landlord-occupier and dangerous persons in one's control. The court concluded that "as Horner Lumber did not have a special relationship to protect Kuehl from either Lance Warne or Kevin Schoenfelder, summary judgment is appropriate on the issue of duty." It is important to note that plaintiff did not argue to the trial court nor to this Court the applicability of Restatement (Second) of Torts 324A (1965). Thus the trial court did not have the opportunity to determine whether a duty existed under § 324A. Neither did the defendant have an opportunity to address the applicability of § 324A. The majority makes this determination sue sponte. I assume the majority did not find error with the trial court's determination that no duty existed under Restatement (Second) of Torts §§ 314–320.

[¶ 24.] Section 324A of the Restatement (Second) of Torts is often referred to as the "Good Samaritan Doctrine." *Appley Bros. v. U.S.,* 164 F.3d 1164, 1173 (8thCir.1999); *Appley Bros. v. U.S.,* 924 F.Supp. 944, 962 (D.S.D.1996). Section 324A outlines the conditions under which a gratuitous actor acquires liability for injury to a third person:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or

> (b) he has undertaken to perform a duty owed by the other to the third person, or

> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Id.*

[¶ 25.] In order for a duty to arise from a gratuitous service, there must be a sufficient undertaking. We stated in *Schultz v. Mills Mut. Ins. Group,* that merely bestowing a benefit on another does not give rise to a duty. 474 N.W.2d 522, 526, (S.D. 1991). In *Schultz,* we affirmed the trial court's finding "that there was no evidence in the record that Mills Mutual ever either expressly or impliedly undertook fire inspection safety services for or on behalf of Farmers Cooperative." *Id.* at 524. The company inspected the elevator and gave a copy of its report to Farmers Cooperative. The company inspection was not for the benefit of the elevator or third parties but for its own use. This is similar to *Schoenwald v. Farmers Co-op Ass'n of Marion,* where we affirmed a trial court's determination that an insurance company that performed an inspection of its insured had no duty under § 324A to perform the inspection non-negligently. 474 N.W.2d 519, 521–22. In that case, there was an explosion three months after Mills Mutual inspected a grain elevator. There was no question that "the purpose of Mills Mutual's inspections were [sic] for Mills Mutual's underwriting and rate-setting." *Id.* at 520. As in *Schultz,* the inspection was for the company's own use, not the use of others. We reasoned:

> Merely because Farmers Cooperative would receive a benefit from Mills Mutual's inspections by way of comment of observations on safety problems does

not establish the intent or action to perform a duty of providing a safe working environment on behalf of Farmers Cooperative. The presentation of that information is purely collateral to the purposes of the inspections. Mills Mutual created no anticipation or expectation on behalf of Farmers Cooperative that their inspections were done for the purposes of providing a safe environment. Indeed, were this court to hold that the relaying of information concerning safety of the premises would create liability on the part of the insurance company, such a decision might well cause an insurance company to choose to not relay that information for fear that by doing so it would create a duty upon itself which it would not otherwise have had. Our purpose should be to encourage the distribution of information concerning possible jeopardy, not to discourage it by creating a previously nonexisting duty.

*Id.* at 522. We further stated that "Restatement (Second) 324A deals with the rendering of services to another. For there to be a duty, those services must fall within the definition of sub-paragraphs a, b, or c." *Id.* at 521.

[¶ 26.] In *Hoekman v. Nelson,* we also affirmed a summary judgment on the basis that the driver of a vehicle who stopped in his lane did not owe a duty to a pedestrian who the driver had waived across the lane of traffic and who was hit by a vehicle in the adjoining lane. 2000 SD 99, 614 N.W.2d 821. We stated: "Under the facts and circumstances in this case, [the driver who waived pedestrian across his lane] did not owe a duty of care to ensure [pedestrian's] safety across the entire street." *Id.* ¶ 18.

[¶ 27.] In order to find that Horner had a duty to Kuehl under § 324A, there must be a gratuitous undertaking; that is, the services rendered to Warne and Schoenfelder should be recognized as necessary for the protection of a third person, i.e. Kuehl. The duty arises if (1) the "failure to exercise reasonable care increase[d] the risk of harm," or (2) Horner's employees undertook the performance of the duty that Warne and Schoenfelder owed to Kuehl or (3) Warne, Schoenfelder or Kuehl relied upon the undertaking. Restatement (Second) of Torts § 324A. The majority does not indicate how the evidence supports the existence of a duty under the requirements of the Restatement section.

[¶ 28.] An analysis of the facts taken in the light most favorable to Kuehl does not show that Horner has a duty to Kuehl. Kuehl alleges that Horner negligently loaded the trailer. Warne and Schoenfelder testified that no Horner employees used a forklift to load the trailer involved in the accident. The only evidence as to whether Horner's employees may have helped load the trailer came from the opinion of Lewis Dirks, an accident reconstructionist hired by State Farm Insurance Company. Dirks' investigation consisted of looking at pictures of the pickup and trailer in the ditch taken after the accident by the Minnehaha County Sheriff's office. By looking at the pictures, he opined that a forklift must have been used. He states in his affidavit:

. . .

c. The photographs show banded bundles of lumber that were of sufficient weight that two men could not lift them and place them onto the trailer.

. . .

i. That a close examination of the photographs of the loaded trailer clearly show at least two banded bundles of lumber near the top of the load. One is on the left and one is on the right. My analysis and calculations indicate that each of said bundles very conservatively

weighed between a minimum of 408 pounds and 612, with both of said weights in the range being conservatively calculated.

j. That said bundles are too large, heavy and awkward for two men to normally load them by hand, especially that high on the trailer load, without the assistance of a loader or forklift. It can therefore reasonably be assumed that the forklift at Horner was used in the loading of at least these two bundles. The design of the trailer would in no way interfere with the use of the forklift to load said bundles. Because the fork [sic] on the lift do tilt, there is no reason why the design of the trailer would interfere with loading any of the lumber, especially the bundles of lumber.

[¶ 29.] The testimony of Schoenfelder and Warne was that they loaded the lumber all by hand without any help or supervision from Horner or its employees. Schoenfelder's testimony was as follows:

Q. Who decided what wood was going to go on which trailer?

A. I did, I think, if I recall right.

Q. And did you just decide it based on what looks like it's going to fit where?

A. Yes.

Q. Do you believe it was the lumber company's responsibility to tell you what wood to put on which trailer?

A. No. They weren't supervising any of this.

. . .

Q. Even though some of it was banded, you and Mr. Warne could still carry it, the two of you?

A. Yes. Some of that was just real small. They were two 2x6s wide and five high and they were all crooked and that's why they banded it. It wouldn't even stack, it was such crooked lumber.

. . .

Q. So there was a forklift used that morning but not for loading in this trailer?

A. Correct. This one with the sides like we talked, had to load it all by hand and it was a pain.

Q. Do you know about how long it would have taken to load this trailer?

A. Twenty minutes.

Warne's testimony also supports Schoenfelder's recollection of events that the two of them loaded all of the lumber. Warne did not recall a forklift being used at any time to load lumber that day.

[¶ 30.] Even considering Dirks's opinion as true, the most that Horner's employees did was to load two large bundles of wood onto the trailer near the top of the load. The only other admissible evidence is from Warne and Schoenfelder who said they loaded all the wood by hand.[3] Therefore, the determination is whether the loading of those two bundles of wood created a duty under § 324A. The question is whether Horner's services to Warne and Schoenfelder, i.e. loading the two bundles of wood onto the trailer, gave rise to a duty to a third party. In order for a duty to be created to a third person under § 324A, one of the following must be present: "(a) [Horner's] failure to exercise reasonable care increase[d] the risk of such harm, or (b) [Horner] ha[d] undertaken to perform a duty owed by [Warne and Schoenfelder] to [Kuehl], or (c) the harm [was] suffered because of reliance of [Warne and Schoenfelder] or [Kuehl] upon the undertaking." *Id.* Here, Horner did not undertake the duty to load all the lumber on the trailer or to provide an inspection as to whether the load was balanced and of the proper weight or whether the loaded trailer could safely haul the lumber on a public highway.

---

3. I agree with the majority that the affidavit of the private investigator is inadmissible.

[¶ 31.] Even the opinion of Dirks does not conclude that the manner of loading these two bundles increased the risk as required by § 324A (a).[4] Nor does the evidence support that Horner undertook to perform a duty which Warne or Schoenfelder owed to Kuehl. Warne and Schoenfelder had a duty to load and transport the wood in a manner that it could be safely driven on a public highway. There is no indication that Horner or its employees undertook that duty. Even assuming the two bundles were loaded with Horner's forklift, Horner did not assume any responsibility to arrange the wood, inspect the trailer or in any other way take on the duty to load and transport the wood in a safe manner. Consequently, subsection (b) has also not been met. Clearly the evidence does not support a finding under subsection (c). Kuehl presented no evidence that either Warne or Schoenfelder relied upon Horner to supervise the loading of the trailer or to load the trailer in its entirety. In fact, Schoenfelder claims he supervised the loading and decided how the wood should be placed. Both men testified that they were the ones who secured the wood onto the trailer. Neither expected Horner to supervise or be responsible. Therefore, the duty does not arise under § 324(c).

[¶ 32.] I would affirm the trial court's determination that Horner had no duty. I would do so under either Restatement (Second) of Torts §§ 314–320 or § 324A.

---

4. Dirks's affidavit specifies what he believed caused the accident:

b. The photographs also show that at the time of the accident some of the lumber was banded with metal. Because the lumber was banded, it was not stacked to the front of the trailer but loaded further to the rear of the trailer.

d. Because of the way the lumber was placed on the trailer, the center of mass of the lumber was moved further away from the front of the trailer. The reduction of the weight on the rear axle of the pickup caused the weight to start to sway from side to side.

e. This accident occurred because of the improper loading of the tandem axle trailer. Because the lumber was loaded to [sic] far to the rear of the trailer, the hitch on the pickup, either didn't have sufficient weight on it or the trailer was actually lifting the back of the pickup. When the unit went over a rough spot on the road the lumber began to bounce. This up and down action of the cargo caused the rear end of the pickup to lose traction and the trailer and pickup started to sway causing the pickup and trailer to go out of control.

f. The accident could have been avoided if the trailer would have been loaded properly with no more weight than the trailer could handle and the weight of the cargo properly located on the trailer.

. . .

k. That the trailer is a homemade trailer, designed with the axles significantly forward of the center point so that the loaded trailer normally has an aft center of gravity, especially when the trailer is loaded as it was at the time of the accident. A result of this aft center of gravity reduces the tongue weight or conceivably causes a negative weight on the tongue, thereby creating a dangerous condition on the highway.