## PAINT PRODUCTS COMPANY *v.* AA-1 STEEL EQUIPMENT COMPANY

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 165074
AT BRIDGEPORT

Memorandum filed November 8, 1977

*Magilnick, Simko & Elstein,* for the plaintiff.
*Bai, Pollock & Dunnigan,* for the defendant.

ZARRILLI, J. The demurrer to the second count of the complaint admits the following well pleaded facts which are pertinent to the issue: The defendant is engaged in the business of manufacturing and installing steel shelving. Its agents, servants and

employees, acting under the supervision of the defendant, reinstalled a portion of old shelving and installed new shelving on the walls of the plaintiff's retail paint store in accordance with the terms of an agreement. In the process of such installation the defendant used new "lags" or "molly bolts." The steel shelving detached itself from the walls of the plaintiff's store causing the contents thereof to fall upon the floor and to cause the damage alleged in the complaint. The defendant knew or had reason to know that the steel shelving was to be used for the particular purpose of holding the plaintiff's merchandise and that the plaintiff relied on the defendant's knowledge and skill in placing its inventory on the shelves. The steel shelving as installed was defective because it was not bolted and affixed to the walls in a secure manner and the "lags" or "molly bolts" used in the installation were too small and of insufficient strength to support the shelving.

To the second count of the complaint, the defendant interposed a demurrer on the ground that it failed to state a cause of action for the reason "that the second count alleges only that the *installation* of the shelving was defective; it does not allege that the shelving itself was defective, and it therefore fails to state a cause of action based upon breach of warranty." (Emphasis added.)

The thrust of the defendant's demurrer is based upon the claim that a breach of warranty arises from the sale of defective goods, that unless the goods themselves are defective there can be no breach of warranty and that no warranty attaches to the furnishing of a service.

In the absence of a decision of the Connecticut Supreme Court limiting the effect of a breach of warranty to the goods themselves as opposed to services directly connected to such goods, and in

view of the ever increasing policy towards the imposition of liability upon a manufacturer for any conduct on his part causing damage to another, this court is inclined to adopt the more liberal trend which appears to be based upon reason and logic. There is no sound reason why a manufacturer who either incidentally or as an integral part of his operations renders services in the installation of his goods, who knows the use and purpose for which they are intended, and who knows that the user thereof is relying on his skill and judgment, should not be held liable under the theory of breach of warranty for each and every step of the process under his control, including services rendered by him, by which the goods are transferred to the ultimate user. See *Buckeye Union Fire Ins. Co.* v. *Detroit Edison Co.*, 38 Mich. App. 325. The contract for the sale of a product and its installation under such circumstances should be considered as a unified whole and not divided into separate and independent parts, especially in this case in which it may reasonably be inferred that the "lags" and "molly bolts" were supplied by the defendant and that they were defective in that they were of insufficient size and strength to support the plaintiff's goods on the shelves.

Consequently, the court finds itself in accord with the reasoning contained in *Newmark* v. *Gimbel's, Inc.*, 54 N.J. 585, where it was held that the transaction involving injuries to the plaintiff's hair resulting from services rendered in applying a certain hair lotion was a sale rather than an agreement for the rendition of services. "The transaction . . . is a hybrid partaking of incidents of a sale and a service. It is really partly the rendering of service, and partly the supplying of goods for a consideration." Therefore, "an implied warranty of fitness of the products used in giving the permanent wave exists with no less force than

it would have in the case of a simple sale." *New-mark* v. *Gimbel's, Inc.,* supra, 593. See also *Cintrone* v. *Hertz Truck Leasing,* 45 N.J. 434, where the New Jersey court upheld an action for breach of warranty in a situation involving a breach of contract to maintain a leased vehicle in good repair, as a result of which the plaintiff, an employee of the lessee of the vehicle, was injured.

In the case of *Insurance Co. of North America* v. *Radiant Electric Co.,* 55 Mich. App. 410, the court upheld a claim of implied warranty against the defendant for failing to use proper materials for the installation of electric wiring in a building under construction where it was claimed that the cables supplied were improperly installed or were internally defective. The Michigan court in that case said (p. 412): "We do not hesitate to rule that under such circumstances there is an implied warranty of fitness and merchantability with respect to the manner in which the goods were installed."

The demurrer is overruled.