**Dennis J. IRWIN, Plaintiff–Appellant,**

v.

**ODYSSEY CONTRACTING CORPORATION, Defendant–Appellee.**

No. 01–2014.

United States Court of Appeals, Sixth Circuit.

March 13, 2003.

Before SILER and ROGERS, Circuit

Judges; and GWIN, District Judge.*

GWIN, District Judge.

With this appeal, we examine two issues. First, we review whether the district court erred in granting Appellee Odyssey Contracting Corporation's ("Odyssey") motion for summary judgment. In granting the summary judgment motion, the district court held that Appellant Irwin could not establish causation beyond mere speculation and conjecture. Second, we decide whether the district court misconstrued the *res ipsa loquitor* doctrine under Michigan law. Specifically, we determine whether the district court erred when it held that Irwin did not satisfy the exclusive control element of the *res ipsa loquitor* doctrine.

We find that Appellant Irwin failed to establish causation beyond mere speculation. We also find that the district court properly rejected Irwin's attempt to use the *res ipsa loquitor* doctrine to presume causation. Therefore, we affirm the district court's grant of summary judgment to Appellee Odyssey.

I. Procedural Background

On November 19, 1998, Plaintiff Irwin suffered severe spinal injuries when a piece of falling plywood struck him while he was working on a bridge construction project. On August 6, 1999, Irwin brought this personal injury action against Odyssey alleging that Odyssey negligently left plywood on the bridge deck, resulting in severe injury to Irwin.

On January 30, 2001, Odyssey moved for summary judgment, arguing that Irwin's evidence was insufficient to satisfy the causation element of negligence. Specifically, Odyssey contended that a jury could not determine, without speculation and conjecture, that Odyssey was responsible for the plywood that blew off the bridge and struck Irwin.

On June 13, 2001, the district court granted Odyssey's motion "because Plaintiff's evidence would require a jury to speculate regarding the source of the plywood." In addition, the district court held that Irwin "failed to show that his theory of causation was more likely than others." The district court reasoned that "a jury would have to guess whether the plywood at issue came from Odyssey."

The district court also rejected Irwin's reliance on the *res ipsa loquitor* doctrine to presume causation in fact, reasoning that he could not establish that Odyssey had exclusive control over the plywood that struck Irwin. Specifically, the district court held that "no one knows where the plywood in this case was located before it hit Plaintiff and no one knows whether Odyssey was the source of that plywood."

On July 11, 2001, Irwin filed a timely notice of appeal.

II. Factual Background

S.E. Johnson Corporation, Inc. ("S.E.Johnson"), a construction contractor, employed Irwin as a laborer. S.E. Johnson was the general contractor on the Blue Water Bridge Project, a restoration project involving the Blue Water Bridge, a major international crossing between Michigan and Ontario.

Four unions, carpenters, laborers, cement masons, and ironworkers, worked for S.E. Johnson on the bridge project. Additionally, S.E. Johnson employed Defendant Odyssey as a subcontractor to do sand-

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

blasting and painting on the bridge. While doing this work, Odyssey constructed containment areas made of scaffolding and enclosed with tarps. To keep the tarps from blowing around on the bridge deck, Odyssey generally secured the tarps with two-by-four furring strips. All the other various workers used plywood to secure their tarps. Further, they all used plywood of the same type and size. Regardless of the type of material used to secure the tarps, neither Odyssey nor the other trades working for S.E. Johnson could nail it down because union regulations required that union carpenters do this job.

On November 19, 1998, Irwin was underneath the bridge, on the south side, rolling up an extension cord. He was facing south while the wind was blowing from the southwest. The bridge was sixty feet overhead. As he was working underneath the bridge, a fifteen-pound piece of plywood flew off the bridge and struck Irwin in the neck, severely injuring his spinal column.

Irwin claims that at the time of the accident, Odyssey's employees were working on the bridge directly overhead him. Conversely, Odyssey says that its workers had begun work on the north side of the bridge, not on the south side. Irwin, however, asserts that the Odyssey workers moved their materials to another part of the bridge after the accident, not before. Irwin further alleges that Odyssey's employees were the only subcontractors working on the bridge that day. It is undisputed, however, that plywood and debris littered the bridge.

James Pike, Michigan Construction Safety Officer, investigated the accident the day after it happened. According to his report, no one at the site saw the plywood leave the bridge. S.E. Johnson's internal investigation confirms this fact. Also, no one identified the plywood as belonging to Odyssey. In fact, Pike's investigation revealed that many workers, including Odyssey, secured their tarps with plywood of the same size and type as the plywood that struck Irwin. Moreover, pieces of that type of plywood littered the entire bridge deck, resulting in Pike's noting that the bridge deck was "messy." Pike attributed the messy bridge to layoffs in the segment of S.E. Johnson's staff responsible for clearing the bridge of plywood debris. These layoffs occurred before the accident. After Pike's investigation, the Michigan Occupational Safety and Health Department cited unsafe working conditions created by the labor disputes involving S.E. Johnson as the cause of the accident. It did not cite Odyssey.

On August 6, 1999, Irwin brought a negligence claim against Odyssey.[1]

### III. Summary of Arguments

Irwin's appeal rests on two grounds. First, he contends that he presented sufficient evidence to satisfy the cause-in-fact prong of his negligence claim. Second, Irwin argues that the district court improperly applied the Michigan law of *res ipsa loquitor* when it rejected his attempt to use the doctrine to create an inference of causation. According to Irwin, contrary to the district court's decision, the *res ipsa loquitor* doctrine does not require exclusive control over the instrumentality of the injury.

### IV. Analysis

#### A. Standard of Review

"This Court reviews a district court's grant of summary judgment de novo."

---

1. Irwin could not sue the general contractor on the job, S.E. Johnson Company, because it was his employer, and was therefore immune from tort liability under the "exclusive remedy" provision of Michigan's workers' compensation statute.

*Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000).

Fed.R.Civ.P. 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, as long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *id.* at 323, 106 S.Ct. 2548, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Emmons v. McLaughlin,* 874 F.2d 351 (6th Cir.1989). "If the nonmoving party is unable to make such a showing, summary judgment is appropriate." *Id.* at 353. "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact." *Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1479 (6th Cir.1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. District Court Applied the Correct Standard

As an initial matter, Irwin argues that the district court did not use the correct summary judgment standard when it held that Irwin failed to "prove" that Odyssey was the cause of the injury. However, the district court's analysis clearly shows that despite its use of the word "prove," it applied the correct standard and determined whether there is any "genuine issue

as to any material fact." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### C. Michigan Law on Causation

Irwin claims that he presented sufficient evidence to establish a *prima facie* case of negligence. Therefore, he argues that the district court erred when it held that he did not satisfy the causation element.

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Haliw v. Sterling Heights,* 464 Mich. 297, 309–310, 627 N.W.2d 581 (2001). "Liability for negligence does not attach unless the plaintiff establishes that the injury in question was proximately caused by defendant's negligence." *Babula v. Robertson,* 212 Mich. App. 45, 54, 536 N.W.2d 834 (1995).

"Proving proximate cause actually entails proof of two separate elements: (1) cause in fact, and (2) legal cause, also known as 'proximate cause.'" *Skinner v. Square D Co.,* 445 Mich. 153, 163, 516 N.W.2d 475 (1994); *Dedes v. Asch,* 233 Mich.App. 329, 338, 590 N.W.2d 605 (1998). The cause-in-fact prong of proximate cause is "that which ... produces injury and without which such injury would not have occurred." *Selph v. Evanoff,* 28 Mich.App. 201, 206, 184 N.W.2d 282 (1970). "On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner,* 445 Mich. at 163, 516 N.W.2d 475. Only the cause-in-fact prong of the causation element is at issue in the present case.

Under Michigan law, a plaintiff may not establish causation-in-fact by evidence amounting to mere speculation or conjecture. *Jordan v. Whiting Corp.,* 396 Mich. 145, 151, 240 N.W.2d 468 (1976) (stating

"[t]he mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two."). Further, while one may prove the cause-in-fact element with circumstantial evidence, such evidence must not be speculative. *Skinner*, 445 Mich. at 164, 516 N.W.2d 475 (stating "[a] plaintiff's circumstantial proof must facilitate a reasonable inference of causation, not mere speculation").

Although the law permits reasonable inferences, where two or more equally plausible explanations exist from the evidence, a jury's selection of one is not a reasonable inference, but pure conjecture. *Buckeye Union Fire Ins. Co. v. Detroit Edison Co.*, 38 Mich.App. 325, 196 N.W.2d 316 (1972).

Here, Irwin's causation theory is mere conjecture and speculation for four reasons. First, Odyssey typically used two-by-four pieces of furring strips, not plywood, to secure its tarps. Next, even if Odyssey used plywood, it was identical to the plywood used by everyone else on the project. Third, the bridge was messy. Finally, the direction of the prevailing winds at the time of the incident makes Irwin's causation theory even more speculative.

First, Odyssey typically did not use plywood to secure its tarps. Instead, it used two-by-four furring strips. Specifically, Kosta Kavoris, Odyssey employee, stated, "we [Odyssey] did not have any plywood up there for our use. We had no use for it, and I always saw them [Odyssey employees] using ... furring strips which were two by fours."

Additionally, though Kavoris admitted that Odyssey workers had access to the plywood used by the other workers, the type of plywood used by S.E. Johnson and every type of worker on the bridge project was identical in size and type. Accordingly, no one could identify it as belonging to

any one bridge worker. As Robert Wiley, S.E. Johnson's Safety and Health Director stated, the piece of plywood that hit plaintiff "was decking that was used on the entire deck *that everybody would use* to put on top of a piece of material that has a chance of flying off the deck." (Emphasis added).

Third, plywood from all the various tradesmen littered the deck of the bridge, including the area where Irwin alleges Odyssey was working on the day of the accident. Shortly before the accident, Wiley inspected the entire bridge area, including the area directly above Irwin's location. Wiley saw carpenters, ironworkers, laborers, and cement masons working on the bridge. He also noticed loose plywood lying around the deck. As to the ownership of the plywood that hit Irwin, Wiley expressly stated, "[i]t didn't belong to Odyssey. It had to belong to the carpenters." Wiley based his opinion on the fact that Odyssey was already moving the tarps off the bridge when he walked by several hours before Irwin's accident. He also was mindful that the wind direction was from the southwest that day.

The day after the accident, Michigan Construction Safety Officer James Pike inspected the site. He observed "hoards of material just piled up all over, haphazardly piled up" such as blankets/tarps, including the area above where the plywood struck Irwin. Pike further stated that he saw "materials stacked" on top of the tarps. He identified the tarps as belonging to S.E. Johnson, noting that they contained a sandwich-like insulation with a polyurethane interior and that they were about five to six-feet by thirty to forty-feet long. He also noted that S.E. Johnson placed the tarps on top of wet concrete to complete a slow curing process after it finished its concrete pour. Based on this inspection, Pike estimated that directly before the incident, hundreds of tarps existed

on the bridge piled with plywood of the same or similar size and weight as the plywood that struck Irwin.

S.E. Johnson employee, Wiley, further stated that typically, including on the day of the incident "there was [sic] various pieces of plywood laying [sic] around that deck."

According to S.E. Johnson employees, the messy conditions on the bridge were partly due to S.E. Johnson layoffs of employees whose duties included picking up the scrap plywood. After the layoffs, S.E. Johnson employees voiced concerns about the danger of materials being blown off the bridge and unsuccessfully attempted to get S.E. Johnson to clean off the bridge.

Irwin does not dispute this. Instead, he says that the plywood that struck him must have been Odyssey's because at the time of the accident, Odyssey was the only contractor working on the bridge area directly above Irwin. Even viewing the evidence in the most favorable light to Irwin and assuming that Odyssey employees were working directly overhead of Irwin, Irwin still fails to show that the plywood that blew off the bridge belonged to Odyssey. As discussed above, on the day of the accident, pieces of plywood used by employees of S.E. Johnson littered the entire bridge, including the area directly above Irwin. Further, every trade employed by S.E. Johnson used the same type and size of plywood as the piece that hit Irwin. The plywood had no identifying characteristics to distinguish its owner. Finally, Odyssey typically used two-by-four furring strips, not plywood, to secure its tarps. Accordingly, Irwin's theory that the plywood belonged to Odyssey is possible. But equally as possible is that employees of S.E. Johnson used the plywood belonging to one of the other tradesmen and left it on the bridge in the same spot that

Odyssey was allegedly working. Therefore, Odyssey's location on the bridge does not make it the more likely owner of the plywood that hit Irwin.

Consequently, Irwin's theory relegates a jury to pure guesswork in trying to reach a conclusion on which set of workers was the source of the piece of plywood that struck Irwin. "Conjecture may be tempting, but it may not be indulged in, either by judge or by jury." *Rose v. McMahon*, 10 Mich.App. 104, 108, 158 N.W.2d 791 (1968).

Finally, beyond the universality of the plywood and the messy bridge conditions, the wind conditions at the time of the incident make it unlikely that the plywood came from the area where Irwin claims the Odyssey employees were working. Based on the prevailing wind conditions, for the piece of plywood that hit Irwin to have come from Odysseys's assumed work location, it would have had to fly in the opposite direction that the wind was blowing. Further, it would have had to have blown against ten to sixty-mile per hour winds.[2]

Again, Irwin's proffered scenario is a possibility. However, so are countless others. The plywood could have blown off another part of the bridge. Any attempt by a jury to conclude that the plywood traveled against a ten to sixty-mile per hour wind would be speculation. Accordingly, given the prevailing wind conditions, we cannot say that Irwin's theory of causation is more likely than other possibilities. "Causation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying defendant's motion for summary judgment." *Skinner*, 445 Mich. at 172–173, 516 N.W.2d 475.

Irwin argues, however, that under the *Skinner* reasoning, his evidence need not

**2.** Wiley estimated the wind gusts at fifty to sixty-miles per hour while Odyssey's work report indicates that the wind speed was ten to thirty-miles per hour.

eliminate other possible causes of injury. Therefore, he says that summary judgment was inappropriate. However, *Skinner* held that the plaintiff must still demonstrate that his theory of causation is more likely than other theories. *Skinner*, 445 Mich. at 165, 516 N.W.2d 475. Here, Irwin has not made the requisite demonstration that his theory of causation is more likely than any other.

In sum, Irwin cannot show that it is more likely than not that the plywood that hit him belonged to Odyssey. First, no one saw the plywood leave the bridge. Second, the prevailing winds were blowing from the southwest. Finally, pieces of plywood belonging to other contractors that were identical to the one that hit Irwin littered the bridge deck. Therefore, Irwin cannot show that his causation theory is more likely than any other. Consequently, we affirm the district court's grant of summary judgment.

### D. The *Res Ipsa Loquitor* Doctrine Under Michigan Law

Irwin also alleges that the district court erroneously dismissed his attempt to invoke the *res ipsa loquitor* doctrine to presume causation. The purpose of the *res ipsa loquitor* doctrine is "to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Jones v. Porretta*, 428 Mich. 132, 150, 405 N.W.2d 863 (1987).

Assuming *arguendo* that Irwin met the requirements of the *res ipsa loquitor* doctrine, Irwin still cannot use the doctrine to presume causation. The *res ipsa loquitor* doctrine, when applicable, merely creates an "inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Jones*, 428 Mich. at 150, 405 N.W.2d 863. Although Irwin argues that the inference applies to

all elements of negligence, the inference of negligence only satisfies the second element of a negligence claim, that the defendant breached its duty to the plaintiff. *Id.* Therefore, even if *res ipsa* applies here, it satisfies the breach of duty element, not the causation element.

Accordingly, we find that the district court was correct in rejecting Irwin's attempt to use the *res ipsa loquitor* doctrine to presume causation.

### V. Conclusion

We conclude that Irwin has not satisfied the causation element of negligence. He has not established causation beyond mere speculation. Further, Irwin cannot invoke the *res ipsa loquitor* doctrine to presume causation. Therefore, we affirm the district court's decision in case 01–2014.

AFFIRMED.